UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA,

v.

CONELL BROGDON,

                      Defendant.
---------------------------------------------------------------X

**MEMORANDUM & ORDER**
15-CR-0287-7 (WFK)

**WILLIAM F. KUNTZ, II, United States District Judge:**

On May 21, 2018, Conell Brogdon pleaded guilty to Count One of the Superseding Indictment. The Court now sentences him and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress and the President and contained in 18 U.S.C. § 3553(a). For the reasons discussed below, Conell Brogdon is hereby sentenced to 210 months of incarceration, 3 years of supervised release, no fine, and a $100.00 special assessment.

## BACKGROUND

On July 15, 2015, the United States filed a 75-count Superseding Indictment against 23 defendants, including Conell Brogdon ("Defendant"). *See* Superseding Indictment, ECF No. 48. On May 21, 2018, Defendant pleaded guilty to Count One of the Superseding Indictment, charging Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d), and admitted as racketeering acts his participation in: (1) the attempted murder of John Doe #1, as alleged in Racketeering Act One-B of the Superseding Indictment; and (2) conspiring to distribute cocaine base, as alleged in Racketeering Act Two. *See* Plea Agreement ¶ 1, ECF No. 539.

The Court hereby sentences Defendant and sets forth its reasons for Defendant's sentence using the rubric of the 18 U.S.C. § 3553(a) factors pursuant to 18 U.S.C. § 3553(c)(2).

## DISCUSSION

**I.    Legal Standard**

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case. The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines

sentencing range. *Gall v. United States*, 552 U.S. 38, 49 (2007). If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines. 18 U.S.C. § 3553(c)(2). The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form[.]" *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.). Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant. The Court addresses each in turn.

## II. Analysis

### A. The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

Defendant, now thirty-one years old, was born on May 11, 1987 in Brooklyn, New York. Presentence Investigation Report ("PSR") ¶ 80, ECF No. 652. Defendant was the sole child born to the non-marital union of Pequita Brogdon and Defendant's father, whose name is unknown. *Id.* Defendant's mother passed away in 1998 at the age of 37 from AIDS-related complications. *Id.*; Def. Sentencing Mem. ("Def. Mem.") at 3-4, ECF No. 723. Defendant has one maternal half-sibling with whom he has not spoken since approximately 2011. PSR ¶ 82.

Defendant was raised under modest economic circumstances. *Id.* ¶ 81. He advised he never met his father, while he and his mother shared a "wonderful" relationship. *Id.* From approximately 1990 to 1996, Defendant lived in North Carolina with his mother so his mother and great-grandmother, who both were ailing, could care for one another. *Id.* ¶ 83; Def. Mem. at 4. From the time his mother passed away until the time of his arrest, Defendant lived at the address of record in Brooklyn, New York with his maternal grandmother, with whom he also shared a close relationship. PSR ¶ 81, 83. Defendant's grandmother is now 80 years old and is a retired nursing assistant. *Id.* ¶ 81. She is aware of Defendant's legal situation and remains supportive. *Id.*

Defendant is currently housed at the Metropolitan Detention Center ("MDC") in Brooklyn, New York. *Id.* ¶ 87. According to the Bureau of Prisons SENTRY database, Defendant has not incurred any disciplinary infractions. *Id.* While housed at the MDC, he has completed the following educational courses: entrepreneurship, basic fitness, card making, acrylic painting, yoga/stress reduction, basketball referee officiating, health education, and finance pre-trial. *Id.* Defendant also completed drug treatment and drug counseling assignments and has been employed in the kitchen since October 4, 2017. *Id.*

Defendant has one daughter, the product of a relationship between Defendant and Shanelle Brown. *Id.* ¶ 84. Defendant's daughter is now seven years old and resides with her mother. *Id.* Defendant has not spoken to Ms. Brown since 2012 because, according to Defendant, she "moved on with her life." *Id.* Ms. Brown relocated to upstate New York when her daughter was approximately three years old and did not keep in touch with Defendant. *Id.* Defendant reported he has not seen his daughter since approximately 2013. *Id.*

Defendant has been in an intermittent romantic relationship with Celia Paul since 2008. *Id.* ¶ 85. Defendant reported he and Ms. Paul share a "good" relationship. *Id.* Ms. Paul is a TSA employee at John F. Kennedy International Airport in Queens, New York. *Id.* Defendant and Ms. Paul do not have a child together, though Ms. Paul has a daughter from a previous relationship who is now 13 years old. *Id.* Defendant reported he has a "great" relationship with Ms. Paul's daughter and that he raised her and provided for her financially prior to his arrest. *Id.* Both Ms. Paul and her daughter are aware of the instant offense and remain supportive. *Id.*

Defendant suffers from asthma, for which he has been prescribed an Albuterol inhaler. *Id.* ¶ 89. In 2009, while housed at Rikers Island Correctional Facility in Queens, New York, Defendant was stabbed in the ear, chin, and chest by a fellow inmate. *Id.* ¶ 90. He received stitches for his injuries and reported he feels no pain from the incident today. *Id.* Defendant reported no history of mental or emotional health conditions. *Id.* ¶ 91.

Defendant has a history of drug and alcohol abuse. *Id.* ¶¶ 92-94. He reported he began to smoke marijuana daily when he was 11 years old and did so up until the time of his arrest, spending approximately $300 per week on the drug. *Id.* ¶ 92. He further reported he spent $300 weekly on ecstasy, which he used every other day, since the age of 16 and until the time of his arrest. *Id.* ¶ 93. Defendant also consumed cognac, beer, and white rum daily until the time of his arrest to "escape" his problems. *Id.* ¶ 94. Notably, when Defendant was incarcerated in local custody, he completed the Residential Drug Abuse Program. *Id.* ¶ 95.

Defendant completed the tenth grade at Erasmus Hall High School in Brooklyn, New York. *Id.* ¶ 96. During the eleventh grade, Defendant transferred to Bedford Stuyvesant New Beginnings School in Brooklyn, but he was expelled for getting into a physical fight with a teacher. *Id.* Defendant reported he received "okay" grades but was often disciplined due to his

4

substance abuse. *Id.* He advised he regrets his behavior and immaturity and is currently trying to obtain his General Educational Development Diploma ("GED"). *Id.* Indeed, according to Defense counsel, Defendant passed all portions of the GED exam except the math section by one point. Def. Mem. at 12-13.

Defendant reported he was intermittently employed as a construction worker throughout New York City prior to his incarceration. PSR ¶ 97. In 2014, he was employed as a sales associate for Brooklyn Sky, a clothing store, for several months. *Id.*

Defendant's criminal history includes several past convictions. In 2010, Defendant was sentenced to two years custody for Assault with Intent to Cause Serious Physical Injury in Kings County Supreme Court. *Id.* ¶ 71. He was paroled in November 2010 and reached his maximum parole expiration date on February 2, 2012. *Id.*

On October 25, 2013, Defendant was arrested for possession of a loaded .38 caliber revolver. Pre-Sentence Investigation Report Addendum ("PSR Addendum") ¶ 72, ECF No. 704. On January 22, 2014, Defendant was released on bond. *Id.* In May 2016, Kings County Supreme Court sentenced Defendant to five years custody for Attempted Criminal Possession of a Loaded Firearm. *Id.*

While Defendant was out on bond for the firearm offense, on June 18, 2014, he was arrested by local authorities for his role in the attempted murder of John Doe #1, as related to the instant offense and as set forth in further detail below. PSR ¶ 73. In May 2016, Kings County Supreme Court sentenced Defendant to ten years custody for Attempted Murder in the Second Degree. *Id.*

Defendant was a member of the Outlaw Gangsta Crips ("OGC") and the Shoota Gang ("SG"). PSR ¶¶ 11, 41. The SG was an offshoot of the OGC that included members and

5

associates of the OGC as well as members and associates of other gangs, including the Eight Trey Crips, the Bosses in Business, and the Bloods. *Id.* ¶ 7. Members and associates of the OGC have engaged in drug trafficking, fraud, firearms trafficking, and promoting prostitution, and they have committed acts of violence, including murder, attempted murder, robbery, assault, and other crimes. *Id.* ¶ 7. The purposes of the OGC included enriching the gang; promoting and enhancing the gang's prestige, reputation, and position among rival gangs; preserving and protecting the gang's power, territory, and criminal ventures; maintaining fear of the gang in its victims and rivals; and concealing the gang's criminal activity from law enforcement. *Id.* ¶ 9. The Government advises Defendant was a leader of both the OGC and the SG. Gov't Sentencing Mem. ("Gov't Mem.") at 1, 3, 4 n.2, 6, ECF No. 724.

With respect to Racketeering Act Two, members and associates of the OGC sold cocaine base in New York, Connecticut, and West Virginia and shared drug suppliers, drug turf, and customers. *See* PSR ¶¶ 15-22. For his part, Defendant distributed cocaine base in Connecticut with co-defendants Malik Campbell, Steven Cherenfant, and Parris Desuze. *Id.* ¶ 17. With co-defendants Desuze, Campbell, Leonard Barletto, Courtney Coy, Stanley Cherenfant, Aikiam Floyd, and Brandon Greenidge, Defendant obtained and distributed cocaine base from multiple suppliers, including co-defendants Cory Harris and Jeffrey Joseph. *Id.* ¶¶ 19-20. Defendant introduced co-defendants Coy, Desuze, and Stanley Cherenfant to Harris. *Id.* ¶ 20.

With respect to Racketeering Act One-B, on June 3, 2014, Defendant and co-defendants Campbell, Joseph, Stephon Rene, and Greenidge surrounded John Doe #1 inside of the Big Boy Deli at 1452 Nostrand Avenue in Brooklyn, New York, and attempted to steal his chain necklace. *Id.* ¶ 43. During the confrontation, Defendant handed a gun to co-defendant Campbell, who shot John Doe #1 multiple times, causing serious bodily injury. *Id.*; Gov't Mem.

6

at 5. Video footage of the shooting reveals after being hit with the first shot, John Doe #1 fell, shattering glass in the back of the deli. Gov't Mem. at 5. After being shot again, John Doe #1 crawled out of the deli's back exit, having been hit in the chest, stomach, and rear. *Id.* He was hospitalized for one and a half months as a result of the shooting. *Id.* Video of the incident shows the deli was busy at the time of the shooting and throughout the day. *Id.* at 4. Indeed, just minutes before the shooting, the video shows a mother with her child purchasing drinks and food. *Id.*

### B. The Need for the Sentence Imposed

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

Defendant's sale of illicit narcotics both provided dangerous and illegal drugs to his community and also helped to fund unlawful gang activity. Defendant's role in the shooting of John Doe #1 both nearly resulted in the victim's death and also endangered the community at large. The victim was shot multiple times in the chest, stomach, and rear. Moreover, the deli was busy at the time of the shooting.

The Court's sentence recognizes the seriousness of this offense and punishes Defendant accordingly. It seeks to deter this Defendant from further criminal activity and encourages him to sever his ties to the OGC and the SG. It also seeks to protect the public from Defendant's

conduct in the future. More generally, the Court's sentence sends a message to other gang members that a life of crime carries a risk of punishment that outweighs any potential gains.

### C. The Kinds of Sentences Available

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant. 18 U.S.C. § 3553(a)(3).

Defendant pleaded guilty to Count One of the Superseding Indictment, which charged Racketeering Conspiracy in violation of 18 U.S.C. § 1962(d). Plea Agreement ¶ 1. In connection with that conspiracy, Defendant admitted as racketeering acts his participation in: (1) the attempted murder of John Doe #1 as alleged in Racketeering Act One-B of the Superseding Indictment; and (2) conspiring to distribute cocaine base as alleged in Racketeering Act Two. *Id.*

The parties dispute the statutory penalties applicable to Defendant. The Probation Department ("Probation") argues the appropriate statutory maximum is life imprisonment. Defendant and the Government, however, both argue the appropriate statutory maximum is 20 years imprisonment, as explicitly agreed to in Paragraph One of the Plea Agreement. The Court considers the parties' contentions in turn.

Probation argues Defendant pleaded guilty to a Class A felony, which renders the statutory maximum term life imprisonment. PSR ¶ 103 & n.1. Under Probation's analysis, even though the Plea Agreement stipulates Defendant faces a maximum term of 20 years, 18 U.S.C. § 1963(a) explicitly provides the statutory maximum term of imprisonment is "life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment." *Id.* The Superseding Indictment charged a conspiracy involving 280 grams or more of a substance containing cocaine base. Superseding Indictment ¶ 15. Under 21 U.S.C. § 841(b)(1)(A)(iii), defendants accountable for 280 grams or more of a substance containing

8

cocaine base "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life." And per 18 U.S.C. § 3559, "an offense that is not specifically classified by a letter grade in the section defining it" is classified as a Class A felony "if the maximum term of imprisonment authorized is . . . life imprisonment." Probation therefore argues Racketeering Act Two—one of the racketeering activities to which Defendant pleaded guilty—is a Class A felony, and the statutory custodial range under 18 U.S.C. § 1963(a) is zero to life incarceration.

Defendant and the Government have a different view. Peter Quijano, Esq., counsel for Mr. Parris Desuze, a co-defendant in this case, filed a letter with the Court dated March 1, 2019 on behalf of his client and several other co-defendants in this case, including Defendant. Mar. 1, 2019 Letter ("Def. Letter"), ECF No. 699. Counsel represented he also filed the letter on behalf of the attorneys of specified co-defendants and the Assistant United States Attorney assigned to the case. *Id.*

Objecting to Probation's conclusions as to the applicable statutory maximum, Mr. Quijano advised the Court that at the time the parties entered into the Plea Agreement, they clearly and unambiguously intended "to enter into a plea of guilty to a violation of a crime which would result in a statutory maximum of 20 years." *Id.* at 2. The defendants charged with cocaine base distribution conspiracy as alleged in Racketeering Act Two therefore "allocuted as to their intent to distribute cocaine base[] without any reference to a mandatory minimum amount of cocaine base." *Id.* Indeed, Counsel notes, "the Court, during the plea hearing, advised the Defendants that the possible statutory maximum was twenty (20) years." *Id.* Counsel accordingly requested "the Court SO ORDER that the Statutory Provisions regarding custody is a maximum term of imprisonment of twenty (20) years for . . . Conell Brogdon." *Id.*

The Government filed a letter with the Court on March 4, 2019, agreeing with defense counsel that the applicable statutory maximum would be 20 years and joined the defendants' "request that the Court order that the maximum term of imprisonment as to each of the Moving Defendants is 20 years." Mar. 4, 2019 Letter ("Gov't Letter"), ECF No. 701. On March 4, 2019, the Court granted the requests of defense counsel and the Government and ordered the statutory maximum applicable to Defendant is 20 years. Order, ECF No. 702; Order, ECF No. 703.

Under Probation's view Defendant's conduct should be classified a Class A felony, Defendant also faces: a maximum term of supervised release of five years, 18 U.S.C. § 3583(b)(1); a maximum fine of $250,000.00, *id.* § 3571(b)(3); mandatory restitution, *id.* § 3663A; and a special assessment of $100.00, *id.* § 3013. Defendant would be ineligible for probation if Count One is a Class A felony. *Id.* § 3561(a).

Under the Government and defense counsel's agreed-upon view that Defendant's conduct is punishable by no more than 20 years, which classifies his conduct as a Class C felony, Defendant also faces: a maximum term of supervised release of three years, 18 U.S.C. § 3583(b)(2); a maximum fine of $250,000.00, *id.* § 3571(b)(3); mandatory restitution, *id.* § 3663A; and a special assessment of $100.00, *id.* § 3013.

### D. The Kinds of Sentence and the Sentencing Range Established for Defendant's Offenses

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines[.]" 18 U.S.C. § 3553(a)(4)(A).

The appropriate Guideline for violations of 18 U.S.C. § 1962(d) is Guideline § 2E1.1, which applies to unlawful conduct relating to racketeer influenced and corrupt organizations.

*See* United States Sentencing Commission, Guidelines Manual ("USSG") § 2E1.1 (2018). Section 2E1.1 instructs the Court to apply the greater of a base offense level of "(1) 19; or (2) the offense level applicable to the underlying racketeering activity." *Id.* Because all of the underlying offenses are greater than 19, the Court applies the base offense levels applicable to the underlying racketeering activity.

The Guideline applicable to Defendant's underlying offense as charged in Racketeering Act One-B—the attempted murder of John Doe #1—is USSG § 2A1.5, which applies to conspiracy or solicitation to commit murder. USSG § 2A1.5(c)(2) instructs the court to apply USSG § 2A2.1 "[i]f the offense resulted in an attempted murder or assault with intent to commit murder." Because the victim sustained serious bodily injury, two levels are added. USSG § 2A2.1(b)(1)(B). PSR ¶ 51. This analysis renders an adjusted offense level of 35 for Racketeering Act One-B.

The Guideline applicable to Defendant's underlying offense as charged in Racketeering Act Two is USSG § 2D1.1(a)(5), which applies to unlawful manufacturing, importing, exporting, or trafficking of drugs as part of a continuing criminal enterprise. USSG § 2D1.1(a)(5) instructs the court to apply the offense level specified in the Drug Quantity Table set forth in USSG § 2D1.1(c). Notably, Probation applied USSG § 2D1.1(a)(5), which pertains to offenses involving at least 280 grams but less than 840 grams of cocaine base. PSR ¶ 56. Because the instant offense involved the possession of firearms, a two-level enhancement is warranted, per USSG § 2D1.1(b)(1). This renders an adjusted offense level of 32 for Racketeering Act Two.[1]

---

[1] The Court recognizes a tension among the parties'—and the Plea Agreement's— application of the Guidelines in this case. In their calculations of the Guidelines applicable to Racketeering Act Two, the parties reference USSG § 2D1.1(c)(5), which applies to offenses involving at least 280 grams but less than 840 grams of cocaine base. But Defendant allocuted to his intent to distribute without reference to an amount of cocaine base. *See* Def. Letter. As

11

To determine the appropriate combined offense level pursuant to USSG § 3D1.4(a), two additional levels are added to the group with the highest offense level, making the combined adjusted offense level 37. *See id.* ¶¶ 62-65.

The Court's analysis tracks Probation's Guidelines-level calculation, to which Defendant does not object and, in fact, expressly seeks to adopt. Def. Mem. at 2-3; Apr. 17, 2019 Def. Letter at 2, ECF No. 725. The Government objects only to the extent it "submits that a three-level role enhancement, pursuant to U.S.S.G. § 3B1.1(a), should apply given that the offense of conviction is racketeering conspiracy and the defendant was a leader of both OGC and the Shoota Gang. Notably, the defendant stipulated to this role enhancement." Gov't Mem. at 3. Indeed, Defendant stipulated in his plea agreement to a three-level increase in his sentencing range pursuant to USSG § 3B1.1(a). Plea Agreement ¶ 2. The Court notes USSG § 3B1.1(a) provides a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." USSG § 3B1.1(b) provides a three-level enhancement "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive." To warrant enhancement, the Government must show by a preponderance of the evidence Defendant had a leadership or managerial role in the conspiracy or enterprise. *See, e.g., United States v. Caballero*, 93 F. Supp. 3d 209, 219-20 (S.D.N.Y. 2015) (Castel, J.) (concluding

---

defense counsel has recognized, had Defendant explicitly allocuted to conspiring to distribute 280 grams or more of cocaine base, the applicable statutory maximum would arguably be life. *See id.*; *see also* 18 U.S.C. § 1963(a) (providing violations are punishable by "not more than 20 years (or for life if the violation is based on a racketeering activity for which the maximum penalty includes life imprisonment)"); 21 U.S.C. § 841(b)(1)(A)(iii) (noting defendants accountable for 280 grams or more of a substance containing cocaine base "shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life."). But as noted, the Government and Defendant stipulate they did not intend to enter into a plea agreement for which the maximum statutory penalty exceeded 20 years of imprisonment. *See* Def. Letter; Gov't Letter.

12

the Government had not proven by a preponderance of the evidence the defendant acted as a manager or supervisor by guiding events or directing others but rather only identified potential methamphetamine purchasers); *see also United States v. Rosa*, 11 F.3d 315 (2d Cir. 1993) (remanding because the district court made no factual finding on the issue of the defendant's leadership role).

The Government argues Defendant was a leader of both the OGC and the Shoota Gang in its submission to the Court. *See* Gov't Mem. at 1, 3, 4 n.2, 6. Probation disagrees, noting "there is no information to indicate that [Defendant] directed, supervised or managed anyone in connection with his gang affiliations and his racketeering activity. Consequently, neither a mitigating nor an aggravating role adjustment is warranted." PSR ¶ 41. Defense counsel does not discuss Defendant's roles in the OGC and the SG but objects to the Government's position. *See* Apr. 17, 2019 Def. Letter at 1-2. The Court concludes a role enhancement is warranted.

Defendant has demonstrated acceptance of responsibility for this offense, reducing his offense level by two levels. USSG § 3E1.1(a). The Government also intends to make a motion stating it was notified in a timely manner of Defendant's intention to enter a plea of guilty, reducing his offense level by one additional level. USSG § 3E1.1(b). Accordingly, all parties agree Defendant's offense level should be decreased by three for acceptance of responsibility. *See* PSR ¶¶ 67-68; Gov't Mem. at 2; Def. Mem. at 2.

Under the Plea Agreement, Defendant and the Government stipulated if the covered defendants entered guilty pleas by July 10, 2018, an additional two-point reduction would be warranted. *See* Plea Agreement ¶¶ 2, 7. All parties agree Defendant should receive this two-point reduction. PSR Addendum ¶ 115; Probation Sentence Recommendation at 1, ECF No.

704-1 (noting Probation's recommendation is "with consideration for the global reduction"); Def. Mem. at 2-3; Gov't Mem. at 3.

All parties further agree this Court should impose a sentence that runs concurrently with Defendant's New York State sentences under USSG § 5G1.3(b). *See* PSR Addendum ¶ 104; Def. Sentencing Mem. at 14-17, 29; Gov't Mem. at 1, 7. As Defendant is already serving undischarged terms of imprisonment in New York State for criminal conduct relevant to the instant offense—the attempted murder of John Doe #1 and his possession of a firearm—USSG § 5G1.3(b) applies to this sentencing. USSG § 5G1.3(b) provides:

> [If] a term of imprisonment resulted from another offense that is relevant conduct to the instant offense or conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of [USSG] § 1B1.3 (Relevant Conduct), the sentence for the instant offense shall be imposed as follows:
>
> (1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and
>
> (2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

The parties stipulated in the Plea Agreement the terms of incarceration should run concurrently. Plea Agreement ¶ 2.

Accounting for the global resolution reduction, Probation argues a Level 32, Criminal History Category II sentence of between 135 and 168 months is appropriate in this case. PSR Addendum ¶ 115; PSR Sentence Recommendation at 3 (noting Probation's recommendation is "with consideration for the global reduction"). Defendant does not object to Probation's Guidelines-Level calculation, though Defendant requests a below-Guidelines sentence. Def. Mem. at 2, 29; Apr. 17, 2019 Def. Letter at 2. The Government argues the Court should apply a

14

Level 35, Criminal History Category II sentence of between 188 and 235 months in light of Defendant's role in the crimes of conviction. Gov't Mem. at 1, 3. A Level 34, Criminal History Category II sentence would yield a sentence of between 168 months and 210 months, as stipulated in the Plea Agreement. *See* Plea Agreement ¶ 2.

Defendant's past criminal convictions, described *supra*, yield a criminal history score of three, establishing a criminal history category of II. The Court finds the appropriate total offense level is 34. USSG Ch. 5, Part A. Under the Guidelines, Defendant may also be sentenced to a term of supervised release of one to three years, *id.* § 5D1.2(a)(2) and a fine of between $17,500.00 and $175,000.00, *id.* §§ 5E1.2(c)(3), (h)(1). The Guidelines further suggest Defendant is ineligible for probation because the applicable guideline range is in Zone D of the sentencing table. USSG § 5B1.1, n.2. Probation notes there is no evidence Defendant has the ability to pay a fine. PSR ¶ 100.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor, requiring the Court to evaluate "any pertinent policy statement ... issued by the Sentencing Commission," 18 U.S.C. § 3553(a)(5), is not relevant to Defendant's sentencing.

### F. The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

Defendant is one of twenty-three defendants in this case, and the Court will craft a unique sentence for each defendant. For the reasons stated in this memorandum and order, and

considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G. The Need to Provide Restitution

Lastly, the seventh § 3553(a) factor, requiring the Court to touch upon "the need to provide restitution to any victims of the offense," 18 U.S.C. § 3553(a)(7), is applicable in Defendant's case, *see id.* § 3663. Since the instant offense occurred after April 24, 1996, restitution is mandatory pursuant to 18 U.S.C. § 3663A and Guideline § 5E1.1(a)(1). No victim impact statement is currently available for John Doe #1. PSR ¶ 40. As a result, the specific amounts owed to the individual victims are unknown and restitution cannot be determined with accuracy. *Id.* Nevertheless, this Court, per 18 U.S.C. § 3664(d)(5), reserves its right to hold an evidentiary hearing within 90 days after sentencing to determine the specific amount owed to the victims.

## CONCLUSION

A sentence of 210 months of incarceration to run concurrently with the undischarged state terms of imprisonment, 3 years of supervised release (with special conditions), no fine, and a $100.00 special assessment is appropriate and comports with the dictates of § 3553. This sentence is consistent with, and is sufficient but no greater than necessary to accomplish, the purposes of § 3553(a)(2).

The Court expressly adopts the factual findings of the Presentence Investigation Report and the Addendum to the Presentence Investigation Report, barring any errors contained therein.

**SO ORDERED.**

s/WFK
HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 18, 2019
Brooklyn, New York